### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

—————————————————————————————

| | |
|---|---|
| **JACKIE TYRONE ALLEN** ) | |
| **1443 Smith Place SE, Apt # T1** ) | |
| **Washington, DC 20032-4777** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) **Case No.: _____** | |
| ) | |
| **OFFICE MOVERS, INC. and** ) | |
| **THE KANE COMPANY** ) | |
| **c/o GARY B. EIDELMAN, Resident Agent** ) | |
| **500 East Pratt Street, Suite 900** ) | |
| **Baltimore, MD 21202-3133** ) | |
| ) | |
| **Defendants.** ) | |

—————————————————————————————)

## COMPLAINT

Plaintiff Jackie Tyrone Allen, ("Plaintiff" or "Mr. Allen"), by and through his undersigned counsel, brings this Action pursuant to provisions of Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12111, et seq., the District of Columbia Human Rights Act ("DCHRA"), and D.C. Code § 32-1542, seeking declaratory and injunctive relief, compensatory and punitive damages, attorneys' fees and costs against Defendants, Office Movers, Inc. and Kane Company ("Defendants", or "OMI" and "KC"), and other appropriate equitable relief for violations of the ADA, and the District of Columbia laws.

Plaintiff has exhausted his administrative remedies. He received a right to sue letter postdated May 31st 2018, which Plaintiff received on June 6, 2018. **See Attached Exhibit A.**

## NATURE OF THE CASE

1.      Plaintiff, a United States citizen and a resident of the District of Columbia, brings this

action against Defendants Office Movers, Inc. and Kane Company, seeking declaratory,

injunctive, and compensatory relief for their unlawful and intentional discrimination, against

him, by their failure to accommodate or, hold interactive discussion on how to accommodate

him, and retaliation, in violation of the ADA, DCHRA and the District of Columbia Workers'

Compensation laws.


2.      Plaintiff was Defendants' employee. He was working for them as a Dock Master, when

he sustained an on the job injury as he was performing his duties. As Dock Master, Plaintiff's

duties included loading trucks for jobs going out the next day, unloading storage and trash

coming back from jobs already done, taking inventory of equipment, recording daily activities

completed for the day and keeping the warehouse neat and in order.


3.      Plaintiff was away from work between January 12, 2016, and May 16, 2016, due to the

job related injury he suffered while carrying out his duties. He was, on doctor's orders taking

chiropractic physical therapy for his injured back, and also treating his injured leg and shoulder.

During that time, he was collecting workers compensation, when Defendants, without any notice

or legitimate reason, terminated his employment while he was still being treated and

recuperating.


4.      OMI and KC, are in the business of moving, transferring people and offices from one

location, state, county, and district address to another.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for civil actions arising under the laws of the United States, – Americans with Disabilities Act, ("ADA"). This Court also has supplemental jurisdiction over Plaintiff's state/DC claims, pursuant to 28 U.S.C. § 1367.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because Defendants does business in the District of Columbia, and was doing business in the District of Columbia at the time of Plaintiff's injury, and pursuant to 28 U.S.C. § 1391(c) because Plaintiff lives in the District of Columbia and suffered the effects of his loss of employment in the District.

## PARTIES

**Plaintiff**

7.       Jackie Allen, a black African American man, is an individual and a resident of the District of Columbia, and a former employee of Defendants Office Movers Inc. and Kane Company.

**Defendants**

8.       Defendants Office Movers Inc. and Kane Company, are related companies that do business within the DC Metro, including the District of Columbia.

9.       Defendants, at all relevant times were Plaintiff's employer for over 10 years, until they terminated him on April 4, 2016.

## FACTS

10.     Jackie Allen worked for OMI and KC from 1997-1999 and from 2010-2016, as a "Mover". He was called to work on a "job-to-job", and was called every day to receive his job assignments for the next day. Plaintiff was never disciplined or written up in his job with Defendants, and never in his entire career working for any employer, or on any job that he was on.

11.     Sometime in March 2012, Mr. Allen was regularly working at the Landover warehouse, which, at the time, was located at 3636 Pennsy Drive, Maryland. Mr. Allen's daily duties there consisted of loading trucks for outgoing deliveries and unloading trucks for warehouse storage.

12.     In August 2015, Plaintiff was promoted to the position of Dock Master at the same location - 3636 Pennsy Drive, after two interviews and glowing reviews from prominent staff in the company. As Dock Master, Plaintiff's duties included loading trucks for jobs going out the next day, unloading storage and trash coming back from jobs, taking inventory of equipment, recording daily activities completed for the day, and keeping the warehouse neat and in order. The warehouse was later relocated to 10100 Willowdale Road by the end of 2015.

13.     On the night of January 11, 2016 at approximately 10:28 p.m., Plaintiff was offloading truck number 813 with leftover storage when he noticed that a panel cart full of heavy wood and metal was incorrectly strapped to the side of the truck. Plaintiff attempted to free the panel cart from the straps by going underneath and pushing the cart up with his legs to stand the cart upright. While he was doing that, the cart rolled forward and came down on his leg trapping him

under it. Henry a colleague who worked the night shift, tried to lift the panel cart to free Mr.

Allen. After edging his way from under the cart, Plaintiff called Dennis Codner, who he worked

with, to notify him of completed truckloads, and to inform him of the accident and what had

happened to him. Plaintiff completed an incident report, and Dennis Codner called the nearest

hospital that could treat Mr. Allen. **See Exhibit B**. The nearest one was Bowie Health Center, so

Mr. Codner took Plaintiff there at 11:45 p.m. Mr. Allen and his co-worker arrived at the Bowie

Health Center around midnight and Plaintiff was seen by Dr. Tomasz Obrzut. After checking

Plaintiff, Dr. Obrzut gave Mr. Allen Motrin for his pain and an x-ray, which showed that

Plaintiff had a contusion on his left ankle. He also had pain on his right shoulder. This injury

arose out of and in the course of Plaintiff's employment with Defendants.


14.     Thereafter, on January 12, 2016, Plaintiff called the law firm of Ashcraft and Gerel, to

schedule an appointment because Plaintiff had injury on the same foot, a while earlier, which he

took to them and they asked him to come back to them if anything else happens to that same

foot. So because his injury at OMI and KC was on the same foot, he called Ashcraft & Gerel, as

they advised him to do. A meeting with Ashcraft was scheduled for that Friday.


15.     On January 14, 2016, Plaintiff felt pain in his back as well, so he went to a South East DC

clinic near his home to get checked out for that. While there, the Clinic concluded that nothing

initially seemed to be out of place but advised him to seek a chiropractor if his back pain persists.

Mr. Allen then met with, attorney Stephen Gensemer of Ashcraft & Gerel, and discussed his pain

and what the South East DC Clinic told him to do. So Mr. Gensemer, recommended a

chiropractor for Plaintiff to consult with. **See Exhibit C.** The chiropractor scheduled Plaintiff's

first appointment at the Smart Medical and Rehab Therapy for January 18, 2016. From there on,

Plaintiff went there two times a week from January 18, 2016, until May 16, 2016, the same day

and date Defendants' Workers' Compensation Commission's ("WCC") Insurance Company,

Travelers Indemnity Company ("TIC") notified Mr. Allen that he has "…reached maximum

medical improvement". **See Exhibit D.** The back injury Plaintiff suffered which necessitated his

having chiropractic treatment, also arose out of and in the course of Plaintiff's employment with

Defendants.

16.     During his treatment and while he was collecting workers' compensation, Plaintiff from

time to time, and at different stages of his healing progress, reported to Mr. Dennis Codner

(Dispatch Supervisor), Mr. William Carter (Dispatch Supervisor), Joe West (Warehouse

Manager), and Mr. Mike Murphy (Deputy Chief of Operations). Hence, Defendants through their

supervisors and managers knew about Mr. Allen' medical treatment progress, and that he was

not fully healed by the time they terminated his employment.

17.     Mr. Allen's visits to and treatment with the chiropractor, consisted of a routine back

exercises and techniques that was intended to get Plaintiff's spine and back into alignment.

Plaintiff was given no medication, but it was a vigorous amount of exercise and resting. During

that recuperative process, Plaintiff's employers made no attempt to check how his injury was

healing, or his condition. They made no attempt to call him, discuss his return to work or ask

when he would be able to do so. While he was going to the chiropractor and getting treatment for

his back, Plaintiff received weekly workers compensation. This payment was handled by Ms.

Michelle Price of Travelers Insurance Co.

18.     When Mr. Allen started feeling better while still having therapy for his back, he started

making plans to return back to his work. In his attempt to do so, he called employee supervisors

and Kristen Collins who worked in Human Resources, to inquire about the "shift rotation" he

would be scheduled when he returned to work. During that call, no one answered their phones so

Plaintiff left a voicemail message for Mr. Mike Murphy, the Deputy Chief of Operations.


19.      After receiving the phone voicemail message Plaintiff left him, on May 13, 2016, Mr.

Murphy returned Mr. Allen's call. It was during that phone call that Mr. Murphy for the first

time, unceremoniously informed Plaintiff that he had been terminated from the Kane Company.

Then, to add insult to injury, a few days later, Plaintiff received a letter in the mail from his

employer's Human Resources office, dated 05/16/2016, which stated that he had been terminated

since April 4, 2016. **See Exhibit E.**


20.  Defendants' terminated Mr. Allen's employment during his disability, because he was

collecting workers' compensation ("WC") that he was entitled to. In retaliation, Defendants

intentionally and discriminatorily terminated his employment, in violation of the ADA and

DCHRA. By Not only did Defendants terminate Mr. Allen's employment, OMI and KC, also

terminated his health insurance with them, at a time he needed his job, his health insurance and

WC most, because he suffered injury on the job working for them, became disabled as a result,

and consequentially unable to work. **See Exhibit F**.


21.     OMI and KC, and their agents knew too well (both subjectively and objectively, based on

any, business, legal, moral/ethical, fairness, etc. standard), that if there was ever a time when

their employee, Mr. Allen needed the "employer" health insurance coverage, or time off to heal, it was after his work related injury and during the period he was off work, getting treatment in order to heal before returning to work. Yet, that was the time Defendants took the conscious, intentional, deliberate, and unlawful discriminatory decision to terminate his employment, and his "employer" health insurance benefit, because he was disabled and claiming WC.

22.     In their letter of 05/16/2016, notifying Mr. Allen that he had been terminated since 04/04/2016, while he was still recuperating from work related injuries that he suffered on the job working for them, Defendant couched the notice letter as "Re: Expiration of FMLA Medical Leave". Claiming in their notice letter that their termination of Mr. Allen was "in accordance with our Family Medical Leave (FMLA) policy and FMLA regulations,…" or that their reason for terminating him was because "you have exhausted your twelve (12) weeks of job protected FMLA leave…'. This fallacy is laughable, because it is simply a lie, a cover up and a pretext for their discriminatory and retaliatory actions against Mr. Allen based on his disability, and the fact that he was collecting WC.

23.     OMI and KC, did not give Mr. Allen any reason other than their false, contrived, pretextual "Expiration of FMLA Medical Leave" reason according to their 05/16/2016 letter they concocted, in order to cover up their true intention for terminating him. Also, when Mr. Murphy returned Mr. Allen's call on May 13, 2016, and in a very brief conversation informed him that he had been terminated, he did not give Mr. Allen any reason for his termination, or the date he was terminated - 4/4/2016, only that he had been terminated. Mr. Allen was shocked and dumbfounded, and when in a few days he received Defendant's letter officially notifying him of

his termination and the date, he was angry and felt betrayed by his employer who he had served very well without any issues for over eight (8) years.

24.     Throughout his tenure working for OMI and KC, Mr. Allen never took any FMLA medical leave. However, as a result of his work related injury, Plaintiff successfully claimed Workers' Compensation during the period that he was having chiropractic treatment to realign his injured back and spine, because he could not work because of his injuries. Also, Mr. Allen, never filed any FMLA application for medical leave for approval (which is a requirement and part of OMI and KC FMLA policy, before an employee could take an FMLA leave), and none was ever approved for him. Furthermore, employees on FMLA leave are not paid.

25.     Defendants' FMLA reason for terminating Mr. Allen in the circumstances they did, is a lie, a cover up and a pretext for their discriminatory and retaliatory action against Mr. Allen based on his disability, and the fact that he was collecting WC. Defendants' action was not based on any legitimate business reason, and as such, violates Mr. Allen's rights under the ADA, DCHRA, and DC Workers' Compensation law.

26.     As a consequence of the injury he suffered on the job on of January 11, 2016, Mr. Allen was out of work, from January 12, 2016, until May 16, 2016, when the WCC insurance, Travelers Indemnity Company ("Travelers"), informed him that he had "reached his maximum medical improvement." Mr. Allen was terminated before his doctor certified him fit to return to his regular duties, and also according to the Travelers, before he "reached his maximum medical improvement".

27.     As a Mover, and from the nature of OMI and KC's business (e.g. moving furniture, desks, cabinets, tables, boxes, books, etc.), Mr. Allen's job involved moving heavy objects, which requires a strong and firm leg on the ground, and a strong back and spine. So because the back injury he suffered on the job, affected his spine, and as such required chiropractic treatment to put his spine back into alignment, it was physically impossible for Mr. Allen to return to work, before his spine were put back in order and healed, and also his leg and shoulder. As a consequence of the work related injury, from January 11, 2016, until May 16, 2016, Plaintiff was out of work for the sole purpose of healing from his work related injury he suffered working for Defendants.

28.     From the moment Mr. Allen suffered his injury at work, OMI and KC were informed. Mr. Allen, according to their policy, completed an "Authorization for Service Form" – and incident report, as attached herewith as exhibit B. It was also one of Defendant's employees who drove Mr. Allen to the hospital.

29.     Throughout Plaintiff's time off work, Defendants also were well aware, that he had a disability that prevented him from being present at work, or carrying out his usual duties at the warehouse. Defendants knew this, because they were paying him Workers' Compensation for his injuries during the relevant period that he was away from work and his duties.

30.     Although Defendants and its agents, including Mr. Mike Murphy, the Deputy Chief of Operations, and Human resources personnel Ms. Kristen Collins, knew Mr. Allen was injured on the job and was having treatment and being paid WC during same period, yet, they

discriminatorily terminated his employment, and retaliated against him because he was collecting WC. They connived and put forward a concerted, intentional written false reason – exhaustion of FMLA medical leave (which he never took), as a pretext and cover-up for the true reason they terminated him before he could recover fully and return back to his job.

31.     Plaintiff was discriminated against by Defendants with respect to reasonable accommodation and discharge based on his disabilities. Defendants failed to accommodate Mr. Allen, by terminating him while he was still not fit to return to work because his back and spine injuries which he suffered on the job while working for Defendants was still healing when they terminated his employment. Mr. Allen had a physical disability that substantially impaired and limited his ability to perform a major life activity. Mr. Allen was unable to stand firm on with his feet, bend, lift and carry desks, chairs, equipment etc., - activities that require a firm back and not a wobbly one.

32.     Plaintiff was retaliated against by Defendants for engaging in a protected activity in violation of the Americans with disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008.

**COUNT I: TITLE 1 OF THE ADA**
**As amended 42 U.S.C. § 12101 et seq.**
**Disability Discrimination Based on Actual Disability**

33.     The allegations of Paragraphs 1 through 32 are hereby re-alleged and incorporated by reference as if fully stated herein.

34.    Defendants' conduct as described in this Complaint constitutes discrimination on the basis of actual disability in violation of Title I of ADA, 42 U.S.C. § 12111, et seq. and its implementing regulation, 29 C.F.R. Part 1630, in the following ways: by pursuing a policy and practice of unwarranted discharge of Plaintiff's employment while he was under a disability for no objective business reasons other than by falsely claiming that Plaintiff was on FMLA medical Leave, when Defendants knew he was not, but used it as a pretext for terminating him. Defendants engaged in a policy and practice of discrimination. See, e.g., 42 U.S.C. § 12112(b); 29 C.F.R. Part 1630. Defendants are "covered entities" as defined under § 1630.2(b).

35.    The acts, omissions, policies and practices of Defendants as meted against Mr. Allen, constitutes discrimination, because it denied Plaintiff, a qualified individual with disability the full enjoyment of his rights to equal employment opportunities solely on the basis of his disability in violation of Title I of the ADA, 42 U.S.C. §§ 12112 and 12117(a). Defendants acted willfully and with actual malice in terminating Plaintiff. As a direct result of OMI and KC's actions, Mr. Allen suffered monetary and non-monetary damages, hence, Defendants are liable.

## COUNT II: TITLE 1 OF THE ADA
### As amended at 42 U.S.C. § 12101 et seq.
### Disability Discrimination Based on Being Regarded by
### Defendants as Disabled

36.    The allegations of Paragraphs 1 through 35 are hereby re-alleged and incorporated by reference as if fully stated herein.

37.    Defendant's conduct as described in this Complaint constitutes discrimination on the basis of Defendants regarding Plaintiff as being disabled, in violation of Title I of ADA, 42

U.S.C. § 12111, et seq.,and its implementing regulation, 29 C.F.R. Part 1630, because by the

totality of Defendants policy, practice and actions in denying Plaintiff the full enjoyment of his

rights to equal employment opportunities – terminating him, terminating his employers' health

insurance benefits, without any showing that the policy and practice is job-related and consistent

with business necessity, clearly shows that Defendants discriminated against Plaintiff on the

basis of his disability because they regarded him as disabled. Defendants also regarded Plaintiff

as disabled because they paid him workers compensation while he was having chiropractic

treatment for his dislocated spine and back pain, as a result of the injury he suffered on the job

working for them.

38.     As a direct result of OMI and KC's discriminatory actions, Plaintiff suffered anguish,

shock, anxiety, helplessness, humiliation, insult, embarrassment, and other damages as a direct

result of Defendants' acts and omissions. Hence, Defendants are liable to Mr. Allen in damages.

**COUNT III: VIOLATION OF ADA**
**As amended at 42 U.S.C. § 12101 et seq., 42 U.S.C. § 12111(9)(B).**
**(Based on Failure to Accommodate Disability)**

39.     The allegations of Paragraphs 1 through 38 are hereby re-alleged and incorporated by

reference as if fully stated herein.

40.     Defendants' actions against Mr. Allen, when viewed in totality of the circumstances,

constitutes discrimination against a qualified disabled individual. They failed to reasonably

accommodate him in employment because of his disability – his injured back and spine. By not

offering him any assessment, not engaging him in an "interactive process" to determine when he

will be able to return to work, and or, whether he will need a reasonable accommodation, and if

such would enable him to be gainfully employed despite his disability, and by outright

terminating him with impunity, intentionally lying as a cover up and pretext, that the reason they

terminated him was because he had outstayed his FMLA leave, when in fact he did not need an

FMLA leave, and did not take any, because he was on workers' comp as a consequence of the

work related injuries he suffered that caused his disability.

41.      Defendants failure to accommodate Plaintiff was intentional, a deliberate and calculated

decision to violate the law. As a direct result of OMI and KC's discriminatory actions, Plaintiff

suffered anguish, shock, anxiety, helplessness, humiliation, insult, embarrassment, and other

damages as a direct result of Defendants acts and omissions. Hence, Defendants are liable to Mr.

Allen in damages

## COUNT IV: VIOLATION OF ADA
### As amended at 42 U.S.C. § 12101 et seq.,
### (Retaliation Based on Receiving Worker's Comp.))

42.      The allegations of Paragraphs 1 through 41 are hereby re-alleged and incorporated by

reference as if fully stated herein.

43.      Plaintiff was retaliated against by Defendants for engaging in a protected activity in

violation of DC Code § 2–1402.61. Defendants retaliated against Plaintiff, and interfered with

his right to exercise his employment rights, benefits and enjoyment pursuant to DCHRA. As a

result of his work related injury, Mr. Allen was entitled to workers' compensation while he was

having treatment and recuperating. He had the right to recuperate and heal before returning back

to work. However, due to Defendants, unlawful practices and policy, he was retaliated against

and his employment with Defendants terminated, because he was claiming his rights under the terms, conditions, benefits, and privileges of his employment. Defendants actions in terminating Plaintiff because he was collecting workers' compensation, amounts to retaliation in violation of DCHRA – DC Code § 2–1402.61.

44.    As a direct result of OMI and KC's retaliatory actions, Plaintiff suffered anguish, shock, anxiety, helplessness, humiliation, insult, embarrassment, and other damages as a direct result of Defendants' acts and omissions. Hence, Defendants are liable to Mr. Allen in damages.

### COUNT V: VIOLATION OF DCHRA – DC Code § 2–1402.11
### Disability Discrimination Based on Actual Disability

45.    The allegations of Paragraphs 1 through 44 are hereby re-alleged and incorporated by reference as if fully stated herein.

46.    Mr. Allen is an employee, and Defendants are covered employers under DC law. Defendants, as his employers, discharged him, and denied him the opportunity to return back to his job after his back injuries had healed. After all, but for the injuries he suffered at work, carrying his duties for Defendants, he would not have been away from his job, and he would not have been collecting any workers compensation. Defendants discriminated against Plaintiff with respect to the terms, conditions, benefits, and privileges of employment without any legal or business justification, but solely on the basis of his disability, even though his disability was work related, and he would have been able to perform his duties with or without accommodation after his back was fully healed and he was able to returned to his duties at work.

47.     Defendants' conduct as described in this Complaint constitutes discrimination on the basis of actual disability in violation of DCHRA – DC Code § 2–1402.11 because, by pursuing a policy and practice of unwarranted discharge of Plaintiff's employment while he was under a disability, for no objective business reasons other than by falsely claiming that Plaintiff was on FMLA medical leave, when Defendants knew he was not, but used it as a pretext for terminating him. Defendants engaged in a policy and practice of discrimination in violation of DCHRA – DC Code § 2–1402.11.

48.     The acts, omissions, policies and practices of Defendants as meted against Mr. Allen, constitutes discrimination, because it denied Plaintiff, a qualified individual with disability the full enjoyment of his rights to equal employment opportunities solely on the basis of his disability in violation of DCHRA – DC Code § 2–1402.11.

49.     Defendants acted willfully and with actual malice in terminating Plaintiff. As a direct result of their actions, Plaintiff suffered monetary and non-monetary damages, and as such, they are liable to Mr. Allen in Damages.

### COUNT VI: VIOLATION OF DCHRA – DC Code § 2–1402.11
### (Based on Failure to Reasonably Accommodate Disability)

50.     The allegations of Paragraphs 1 through 49 are hereby re-alleged and incorporated by reference as if fully stated herein.

51.     Defendants' actions against Mr. Allen, when viewed in totality of the circumstances, constitutes discrimination against a qualified disabled individual by failure to accommodate him

in employment because of his injured back and spine. By not offering him any assessment, not engaging him in an "interactive process" to determine when he will be able to return to work, and or, whether he will need a reasonable accommodation, and if such would enable him to be gainfully employed despite his disability, and by outright terminating him with impunity; intentionally lying as a cover up and pretext, that the reason they terminated him was because he had outstayed his FMLA leave, when in fact he did not need an FMLA leave, and did not take any, because he was on workers' comp as a consequence of the work related injuries that caused his disability.

52.     Defendants failure to accommodate Plaintiff was intentional, a deliberate and calculated decision to violate the law. As a direct result of their actions, Plaintiff suffered monetary and non-monetary damages, and as such, they are liable to Mr. Allen in Damages.

## COUNT VII: DCHRA – DC Code § 2–1402.61.
### (Retaliation Based on Receiving Worker's Comp.))

53.     The allegations of Paragraphs 1 through 52 are hereby re-alleged and incorporated by reference as if fully stated herein.

54.     Plaintiff was retaliated against by Defendants for engaging in a protected activity in violation of DC Code § 2–1402.61. Defendants retaliated against Plaintiff, and interfered with his right to exercise his rights and enjoyment pursuant to DCHRA. As a result of his work related injury, Mr. Allen was entitled to workers' compensation while he was having treatment and recuperating. He had the right to recuperate and heal before returning back to work. However, due to Defendants' unlawful practices and policy, he was retaliated against and his employment

with Defendants terminated, because he was claiming his rights under the terms, conditions, benefits, and privileges of his employment.

55.     Defendants actions in terminating Plaintiff because he was collecting workers' compensation, was retaliatory in violation of DCHRA – DC Code § 2–1402.61, and as such, Defendants are liable to Plaintiff in damages. As a direct result of their actions, Plaintiff suffered monetary and non-monetary damages, and as such, they are liable to Mr. Allen in Damages.

## COUNT VIII: D.C. Code § 32-1542.
### (Retaliation Based on Receiving Worker's Comp.)

56.     The allegations of Paragraphs 1 through 55 are hereby re-alleged and incorporated by reference as if fully stated herein.

57.     Plaintiff was retaliated against by Defendants for engaging in a protected activity in violation of D.C. Code § 32-1542 - for claiming and receiving workers' compensation. When Defendants terminated Plaintiff, Defendant was fully aware that Plaintiff had claimed and was receiving workers' compensation benefit.

58.     Defendants terminated Plaintiff solely because he claimed and was receiving workers' compensation benefit in violation of D.C. Code § 32-1542.

59.     In response to and because of Plaintiff's protected activity, Defendants, by and through its agents, servants and employees took adverse action against Mr. Allen, by terminating him on

4/4/2016, while he was still getting treatment for his injured back, and before he was fully healed and able to return to work. Defendants actions are in violation of D.C. Code § 32-1542.

60.      Plaintiff was retaliated against by Defendants for engaging in a protected activity in violation of D.C. Code § 32-1542. Defendants retaliated against Plaintiff, and interfered with his right to exercise his rights and enjoyment pursuant to DC Workers Compensation Law. As a result of his work related injury, Mr. Allen was entitled to workers' compensation while he was having treatment and recuperating. He had the right to recuperate and heal before returning back to work. However, due to Defendants, unlawful practices and policy, he was retaliated against and his employment with Defendants terminated, because he was claiming his rights under the terms, conditions, benefits, and privileges of his employment, pursuant to DC Workers Compensation Law.

61.      Defendants' actions in terminating Plaintiff because he was collecting workers' compensation, were retaliatory in violation of D.C. Code § 32-1542. As a direct result of their actions, Plaintiff suffered monetary and non-monetary damages, and as such, they are liable to Mr. Allen in Damages.

WHEREFORE, Plaintiff prays the Court for relief as follows:

(a)  Grant judgment in favor of Plaintiff and declare that Defendants have violated Title I of the ADA, 42 U.S.C. § 12111 et seq., DCHRA – DC Code § 2–1402.11 et seq., and D.C. Code § 32-1542.

(b)  Judgment against Defendants on each count from Count I through Count VIII in the amount of $700,000 (seven hundred thousand dollars) respectively.

(c)   Punitive Damages in the amount of $1,000,000 (one million dollars) to punish Defendants for the callous and inhumane way they treated Plaintiff;

(d)  Back pay and front pay with interest;

(e)  Reasonable Attorneys' Fees and Costs;

(f)  Permanent Injunctive Relief – barring Defendant and its agents, employees, successors from engaging in discriminatory and retaliatory employment policies and practices against employees based on disability;

(g)  Such other appropriate relief as the Court deems fit, and as the interests of justice require.

## DEMAND FOR JURY TRIAL

**Plaintiff hereby demands a jury trial for all issues triable by a jury.**

*/s/ Stephen Christopher Swift*
Stephen Christopher Swift
DC Bar No. 428459
Swift & Swift, Attorneys at Law, P.L.L.C.
Suite 200
2121 Eisenhower Avenue
Alexandria, Virginia 22314-4688
Telephone: (703) 418 – 0000
Facsimile: (703) 535 – 8205
E-mail: steve@swift.law.pro

*Attorney for Plaintiff*
*Jackie Tyrone Allen*